***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission hereby finds as fact and concludes as law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of parties.
3. The parties were subject to and bound by the Workers' Compensation Act on the date of the injury and an employment relationship existed between them.
4. The parties agree that the incident occurring on June 14, 2001 constitutes an accident under the North Carolina Workers' Compensation Act.
5. Plaintiff has an average weekly wage of $387.17 and a compensation rate of $258.12.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was thirty-eight (38) years old at the time of the hearing before the Deputy Commissioner. She left school in the 9th grade and later secured a GED. Prior to her employment as a planter with Metrolina Greenhouses on February 29, 2000, all of her work experience had been as a waitress. As a planter for Metrolina Greenhouses, plaintiff's primary duty was to place flowers in pots as the pots passed her on a conveyor belt.
2. On June 14, 2001, while working in a greenhouse, plaintiff needed to push a large table. Plaintiff had her hind quarters pressed against the table and was attempting to push it using her backward momentum. While performing this activity, plaintiff felt a sharp pain in her posterior down her leg. She was unable to walk by lunchtime but somehow worked for the reminder of the day.
3. As a result of the injury, plaintiff presented at NorthCross Urgent Care the following day. Plaintiff was treated with prescription medication and released with work restrictions of no lifting over 20 pounds and no extensive stooping, bending, twisting and pushing.
4. Plaintiff returned to NorthCross Urgent Care on June 20, 2001. Her restrictions were modified to no lifting over 10 pounds, no stooping, bending, twisting or climbing and minimal pushing, pulling and carrying. She was referred to physical therapy at Carolina Physical Therapy Network.
5. On June 26, 2001, plaintiff began physical therapy and on July 3, 2001, she was referred to Dr. Joseph Zuhosky, at Miller Orthopedic Clinic.
6. Dr. Zuhosky began treating plaintiff with a Prednisone taper and continued her physical therapy. He modified plaintiff's restrictions to no lifting over 25 pounds and no bending, stooping or squatting.
7. Over the next 3 months, Dr. Zuhosky ordered an MRI, a bone scan and an EMG-nerve conduction study. The results of these tests were normal. During this period of time, in mid-September, 2001, plaintiff fell at work and aggravated her back injury. She was out of work for about six weeks and received temporary total disability benefits for those weeks.
8. On November 14, 2001, Dr. Zuhosky released plaintiff at Maximum Medical Improvement with no restrictions and no permanent partial disability rating. At the time of her release, plaintiff was still experiencing a significant amount of pain, as well as substantial deficits in her range of motion in the areas of flexion and extension.
9. On December 5, 2001 and January 18, 2002, plaintiff sought treatment with her primary care physician, Dr. George C. Monroe, for intermittent pain and burning in the right sacroiliac and right lateral hip region.
10. On December 20, 2001, Metrolina Greenhouses laid plaintiff off purportedly due to a seasonal decline in available work. Very little credence is given defendants' evidence concerning plaintiff's termination inasmuch as plaintiff was the only employee asked to leave out of approximately 270 employees. The Full Commission finds she was terminated because she filed a workers compensation claim.
11. For the week ending January 5, 2002, plaintiff began collecting weekly unemployment benefits of $178.00 for 22 weeks.
12. On February 27, 2002, plaintiff was seen by Dr. Kevin Zitnay, a neurosurgeon, at Piedmont Neurosurgery and Spine, P.A. Plaintiff was diagnosed with right sacroiliac joint sprain and sacroiliitis. Dr. Zitnay recommended SI joint injections and physical therapy. He referred plaintiff to Dr. William Gary Shannon for the right SI joint injection.
13. On April 10, 2002, Dr. Zuhosky transferred plaintiff's care to Dr. Zitnay. Dr. Zuhosky noted that due to plaintiff's recent positive findings on a Gaenslen's Test, he felt the course of care prescribed by Dr. Zitnay was reasonable.
14. On May 19, 2002, plaintiff worked approximately six hours on a temporary job picking up trash at Lowes Motor Speedway. The job involved a considerable amount of bending, stooping and walking. This activity resulted in an increase in plaintiff's pain, and she did not return to this job after May 19.
15. On June 18, 2002, plaintiff returned to Dr. Zitnay and began his recommended treatment plan.
16. On September 20, 2002, plaintiff took a job as a waitress at Troutman's BBQ (Troutman's). The job required her to take orders, deliver food and restock tea and coffee. On two occasions during plaintiff's employment with Troutman's, she worked double shifts. On both occasions, plaintiff experienced a temporary worsening of her pain and had to miss work the following day.
17. On October 17, 2002, Dr. Zitnay noted plaintiff's permanent physical limitations with respect to walking, bending, stooping, carrying and lifting. Plaintiff would require a workplace with frequent changes in position. Plaintiff would be limited to lifting and carrying restrictions of 10 to 15 pounds. Even with these restrictions, plaintiff would be expected to be absent from work from time to time due to symptom exacerbation. Dr. Zitnay stated, and the Full Commission finds as fact, that plaintiff would require future medical treatment of intermittent sacroiliac joint injections, ongoing physical therapy and medication. The Full Commission hereby determines that there is a substantial risk of the necessity of future medical compensation.
18. Dr. Shannon became plaintiff's authorized treating physician, upon motion by the plaintiff, when Dr. Zitnay returned to his home state of Minnesota in February 2003.
19. Dr. Shannon agreed with Dr. Zitnay's assessment of the plaintiff's work restrictions. However, he lowered her lifting and carrying restrictions to 2 to 3 pounds. Dr. Shannon was unaware of any job plaintiff was capable of that would not exacerbate her symptoms.
20. Dr. Shannon, Dr. DuPuy (the physician who performed an independent medical evaluation on plaintiff in February 2003), Dr. Zitnay and Dr. Zuhosky all indicated that any increase in the activity of plaintiff could result in flare-ups of her condition.
21. As of the date of the hearing in this matter before the Deputy Commissioner, plaintiff was still working at Troutman's at reduced wages without obvious deterioration of her condition.
22. The evidence of record is not sufficient to support a finding that plaintiff has reached maximum medical improvement.
23. As a result of plaintiff's compensable injury sustained while working for Metrolina Greenhouses, plaintiff's wage-earning capacity has been impaired since December 20, 2001. However, a complete set of earnings records for plaintiff during her employment with Troutman's has not been entered into the record of this case. Even for the periods covered by pay stubs that were entered into the record, the Full Commission is unable to calculate plaintiff's earnings with certainty.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's June 14, 2001 right sacroiliac injury arose out of the course and scope of her employment with Metrolina Greenhouses. N.C. Gen Stat. § 97-2(6).
2. Based upon the greater weight of the competent evidence of record, it is concluded that when Dr. Zuhosky released plaintiff without impairment rating or work restriction on November 14, 2001, plaintiff was suffering from sacroiliac joint sprain resulting from her compensable injury of June 14, 2001 and was unable to earn the same or greater wages.
3. Plaintiff is incapacitated due to her June 14, 2001 right sacroiliac injury to earn the wages which she "was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9).
4. Plaintiff's work at Lowes Motor Speedway on May 19, 2002, and the two instances on which she worked double shifts at Troutman's did not cause material exacerbation of plaintiff's condition sufficient to represent specific traumatic incidents.
5. Plaintiff is entitled to temporary total disability benefits from December 21, 2001 to September 20, 2002. Pursuant to N.C. Gen. Stat. §97-42.1, the amount of unemployment insurance benefits, $178.00 per week for the twenty-two (22) week period beginning with the week ending January 5, 2002, and ending with the week ending June 8, 2002, shall be deducted from the workers' compensation benefits due plaintiff. Pursuant to N.C. Gen. Stat. § 97-30, plaintiff is entitled to temporary partial disability benefits for the period beginning September 20, 2002, and continuing until further order of the Industrial Commission or said benefits otherwise terminate according to law.
6. As plaintiff has been working at Troutman's for approximately a year and a half as of the time of the hearing before the Deputy Commissioner without obvious and material deterioration of her condition, plaintiff's request for re-instatement of temporary total benefits is denied.
7. The evidence is insufficient to establish that plaintiff has reached maximum medical improvement.
8. Plaintiff is entitled to the payment of her medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to affect a cure, provide relief, or lessen the period of disability. The Full Commission has determined that there is a substantial risk of the necessity of future medical compensation and defendants responsibility for medical compensation shall not end after the two-year period described in N.C. Gen. Stat. § 97-25.1.
9. Plaintiff's request for the imposition of sanctions against defendants is denied.
10. Under the North Carolina Workers' Compensation Act, "disability" (the opposite of "employability") is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. §97-2(9) (1993). Interpreting Section 97-2(9), our Supreme Court stated inHilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682, (1982), that to make a finding of disability, the Commission is required to make the following findings: (1) the employee was unable to earn the wages she did prior to her injury in the same employment, (2) the employee was unable to earn wages she did prior to her injury in any other employment and (3) the employee's inability to work and earn wages was a result of her injury. In a proceeding to determine whether an employee is totally disabled within the meaning of Section 97-2(9), the employee has the initial burden of proving that her wage earning capacity has been impaired by injury and that she is unable to earn the same wages in her employment. Lackey v. R.L. Stowe Mills, 106 N.C. App. 658, 418 S.E.2d 517
(1992); Kennedy v. Duke University Medical Center, 101 N.C. App. 24,398 S.E.2d 677 (1990) (relying on Bridges v. Linn-Corriher Corp.,90 N.C. App. 397, 368 S.E.2d 388, Disc. Rev, denied, 323 N.C. 171,373 S.E.2d 104 (1988)). Once the employee satisfies her initial burden, the burden shifts to the defendant to prove that the plaintiff is employable and can obtain a job taking into account her specific limitations. Lackey, 418 S.E.2d at 5 19-20; Kennedy, 398 S.E.2d at 682. A worker must not be able to fill a particular job; she must also be capable of getting that job. Bridges. Showing that jobs exist or that the average job seeker can get a job is not sufficient. A defendant must prove that the injured employee can get a job taking into account her specific limitations. Bridges.
11. When determining whether a claimant is disabled, the Commission may consider the employee's own testimony about her limited ability to engage in physical activities as well as her degree of pain, age, education, and work experience. Niple v. Seawell Reality Industrial Co.,88 N.C. App. 136, 362 S.E.2d 572, 574 (1987).
12. Applying the evidence in this case to the foregoing law, the inescapable conclusion is that the plaintiff is disabled from her on-the-job injury. Plaintiff dropped out of school in the ninth grade. She completed her GED nineteen years ago, along with a basic computer class. Since then, the plaintiff has waited tables at various restaurants, including Troutman's BBQ, and worked as a planter at Metrolina Greenhouses. While employed at Troutman's BBQ, plaintiff averaged $178.00 per week. The check stubs in the stipulated exhibits suggest a slightly higher average of $198.00. Both numbers are significantly lower than her stipulated $387.17 average weekly wage and corresponding $258.12 compensation rate she was earning at Metrolina Greenhouses.
13. The entire body of evidence offered supports the fact that plaintiff is not able to work without continuous pain and is, therefore, unable to earned the wages she had earned at Metrolina Greenhouses and has been since June 14, 2001. Plaintiff was totally disabled until she was forced out of financial necessity to begin working at Troutman's BBQ. Since working there, she has had a substantial decrease in income and earning capacity due to her injuries and limitations. Audrey Beaver is entitled to temporary partial disability benefits to make up the difference in her lost income.
14. Plaintiff suffered a compensable right sacroiliac joint sprain injury by accident arising out of and in the course and scope of her employment with Metrolina Greenhouses on June 14, 2001. Plaintiff has shown by the overwhelming weight of the evidence that: (1) she is unable to earn the wages she did prior to her injury in the same employment, (2) she is unable to earn wages she did prior to her injury in any other employment and (3) her inability to work and earn wages are a direct result of her admittedly compensable injury by accident on June 14, 2001 at Metrolina Greenhouses. Plaintiff's medical records and expert medical testimony of Dr. Joseph Zuhosky and Dr. Gary Shannon, when viewed in their entirety, support plaintiff's position. Based upon the evidence before the Commission, plaintiff has met her burden of proof and her claim for benefits in the form of medical care and expenses, temporary total disability benefits and temporary partial disability benefits is valid.
 ***********
Based on the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters into the following:
 AWARD
1. Plaintiff is entitled to temporary total disability benefits in the amount of $258.12 per week from December 21, 2001, until September 20, 2002. From these amounts, $178.00 per week is to be deducted for the weeks ending January 5, 2002, through June 8, 2002, pursuant to N.C. Gen. Stat. § 97-42.1. Plaintiff is entitled to temporary partial benefits pursuant to N.C. Gen. Stat. § 97-30. However, as insufficient evidence has been presented to allow for calculation of plaintiff's post-injury average weekly wage, plaintiff is instructed to provide defendants with earnings records from Troutman's that clearly show plaintiff's earnings, including all tips. From those records, the parties shall agree upon plaintiff's post-injury average weekly wage. If the parties cannot agree on said figure, a Form 33 can be filed on that issue.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her injury by accident, in amounts required by the Industrial Commission's Medical Fee Schedules.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel and shall be paid by defendants directly to such counsel out of funds otherwise due plaintiff.
4. Defendant shall pay all costs.
This 22nd day of December 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER